```
UNITED STATES DISTRICT COURT
   DISTRICT OF SOUTH CAROLINA
       CHARLESTON DIVISION
```

| | |
|---|---|
| Akiliou Smith, | Civil Action No.: 2:16-655-BHH |
| Plaintiff, | |
| vs. | **OPINION AND ORDER** |
| The Charleston County Sheriff's Office, James L. Jacko, Donald Stanley, John Wiedemann, Zach Lindsay, Matthew Wean in their respective individual capacities, | |
| Defendants. | |

On December 20, 2016, Plaintiff Akiliou Smith ("Plaintiff") filed his amended complaint in this 42 U.S.C. § 1983 action alleging that Defendants James L. Jacko ("Jacko"), Donald Stanley ("Stanley"), John Wiedemann ("Wiedemann"), Zach Lindsay ("Lindsay"), Mathew Wean ("Wean") (collectively "Individual Defendants"), and the Charleston County Sheriff's Office ("CCSO") violated his Fourth Amendment rights during a search of his home and seizure of his person. (ECF No. 32.) Plaintiff also brought related state claims for false imprisonment, invasion of privacy, trespass, and negligence. (*Id.*) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant, for consideration of pretrial matters. The Magistrate Judge prepared a thorough Report and Recommendation ("Report") which recommends that Defendants' motion for summary judgment (ECF No. 60) be granted in part and denied in part. (ECF

1

No. 70.) Defendants and Plaintiff filed timely objections to the Report. (ECF Nos. 71 & 72.) Additionally, the parties filed replies to one another's objections. (ECF Nos. 73 & 74.) For the reasons set forth herein, the Court adopts the Report.

## **BACKGROUND AND PROCEDURAL HISTORY**

The Report sets forth in detail the relevant facts (*see* ECF No. 70 at 2–7) and standards of law, and the Court incorporates them herein, summarizing below only in relevant part.[1] On December 7, 2015, a woman named Ms. Foggy called 911 to report that she found an unknown man in her house. Ms. Foggy provided a description of the intruder, a black male, including his appearance, his height and weight, and the clothes he was wearing. Defendant Jacko, along with another sheriff's deputy who is not listed as a defendant, responded to the call and interviewed Ms. Foggy at her home. Ms. Foggy gave her description of the intruder to Jacko during the interview. A K-9 officer was requested, whereupon Defendant Lindsay responded to the scene with his police dog. After being provided with a description of the suspect, Lindsay and the K-9 began canvassing the area where the suspect was last seen with several other officers.

Lindsay and the K-9 came upon Plaintiff who was standing in his driveway smoking a cigarette. Lindsay testified that his dog went into alert status and he saw someone out of the corner of his eye "essentially lurch behind a vehicle," gave him reasonable suspicion that something was "going on." Lindsay further testified that he directed his flashlight toward the subject and yelled "show me your hands," at which point the subject ran from behind the vehicle toward the house.

---

[1] As always, the Court says only what is necessary to address the parties' objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; comprehensive recitation of law and fact exist there.

Plaintiff testified that he was standing in his driveway finishing a cigarette when he noticed a man with a dog. Plaintiff stated that he is not fond of dogs and the dog he observed was big. Plaintiff further testified that he could not tell who the man was because it was dark, but when they noticed each other the man said "Hey, you, come here." Plaintiff further stated that he never heard Lindsay say he was a sheriff's officer. Plaintiff explained that because the man started running toward him, he did not respond to the individual's statement but ran into his house.

Lindsay proceeded to the house and began to "pound" on the door. Plaintiff and his family, who were in the house, were distraught, and some of the family began crying as the individual grabbed the door handle and tried to open it. Lindsay and Jacko both testified that they identified themselves as members of the Charleston County Sheriff's Office, but no one answered the door. Plaintiff called 911 to report that a man with a dog had just run at him in his yard. While he was on the phone with the 911 operator, he could hear knocking on the door and someone yelling outside. Plaintiff was not sure what the people at the door were saying, but his wife told them "don't come in here."

Plaintiff's mother-in-law, Tonya Davis ("Davis") was in the house during the incident, and testified that someone was banging on the door and screaming various profanities, such as "open the f****** door." Ms. Davis stated that when the individual yelled that they were the "f****** police," and she asked what they wanted, they asserted that she had let a fugitive into her house. Ms. Davis told them she was not opening her door for them because Plaintiff said he did not know who they were, she did not know who they were, and she did not know what they might do based on the way they were

3

"carrying on and cursing out there." Ms. Davis further testified that she was afraid as a result of their behavior.

Another individual in the house, Dominique Smith ("Smith"), testified that the individuals outside the house were yelling "open the f****** door" and saying they were going to "kick this s*** down." Ms. Smith stated that when she asked the individuals who they were, they identified themselves as the police. She further testified that when she asked "what is wrong? What is the problem . . . I have my kids in here," they responded "open it up" and threatened to "kick this mother-f***** down." Ms. Smith, having "never experienced anything like this," said she did not believe the individuals were actually police, and refused to open the door because she was afraid.

It is undisputed that Plaintiff lived at the residence, that he was not the intruder who had been at Ms. Foggy's house, and that other than being an African-American male he did not fit the description of the intruder that Ms. Foggy provided, with respect to height, weight, or his clothing.

When the residents of the house would not open the door, Lindsay testified that he kicked the door once in an attempt to kick it in, and then Jacko "kicked the door in maybe twice, and the door kicked in." The deputies entered the house into a room full of a least five people, most of whom were upset and crying or yelling at them. Jacko stated that the individuals made it clear that the deputies were not welcome and that they wanted the deputies to leave. Jacko also conceded that by this point it was clear that Plaintiff was not an intruder in the residence, and that any exigency that had previously existed had expired.

4

Nevertheless, Lindsay and Jacko persisted in their efforts to speak with Plaintiff. Instead of leaving, Jacko demanded to know where Plaintiff was, saying "we need to speak to him." Plaintiff was located in the house and initially refused to go with the deputies, so Jacko "grabbed his wrist." Jacko testified that Plaintiff "pulled away from me and so I grabbed it again, and that is when the Defendant Deputy Wean came in and helped me handcuff [Plaintiff]." Jacko stated that Plaintiff was "passively" resisting the officers' verbal commands to go outside, but that once Deputy Wiedemann aimed his taser at Plaintiff and said "you are going to come outside," Plaintiff complied. Once outside, the group was met by Defendant Stanley, a Lieutenant, who had since arrived on the scene. Plaintiff was held until Ms. Foggy was brought to the scene and confirmed that Plaintiff was not the intruder who had been in her home, at which point Plaintiff was released.

On May 18, 2018, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 60.) Plaintiff responded (ECF No. 62) and Defendants replied (ECF No. 64) in turn. After consideration of all the relevant briefing and detailed analysis of the record, the Magistrate Judge issued a Report recommending that Defendants' motion for summary judgment be granted in part and denied in part. (ECF No. 70.) Specifically, the Magistrate Judge concluded that the motion for summary judgment with respect to Plaintiff's federal claims asserted pursuant to 42 U.S.C. § 1983 (Counts 1–3) should be denied, but that Defendant Stanley should be dismissed as a party on Plaintiff's illegal search claim and that Defendants Stanley and Lindsay should be dismissed as parties on Plaintiff's excessive force claim. (*Id.* at 13

n.7, 17 n.9, 22.) The Magistrate Judge further found that the CCSO's motion for summary judgment with respect to Plaintiff's state law claims should be granted, and those claims should be dismissed without prejudice. (*Id.* at 22.) Finally, because the CCSO is only named as a Defendant in the state law causes of action, the Magistrate Judge concluded that the CCSO should be dismissed as a party in this case. (*Id.*) The Court has reviewed the objections (ECF Nos. 71 & 72) to the Report and finds them to be without merit. Therefore, the Court will enter judgment accordingly.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

**DISCUSSION**

**A. Bystander Liability**

Defendants object by arguing that Plaintiff did not specifically plead bystander liability in the amended complaint, and "There is no language in the Amended Complaint that can be construed as alleging bystander liability." (ECF No. 71 at 1–2.)

First, with respect to Defendant Wiedemann, Defendants cite footnote 8 in the Report, which states, *inter alia*, "[T]he undersigned does not find that Wiedemann's mere drawing of his taser by itself would amount to an excessive use of force." (*See* ECF No. 70 at 17 n.8 (citations omitted).) Defendants argue that Wiedemann should have been recommended for summary judgment on the excessive force claim because his only involvement was in verbally speaking to Plaintiff and drawing his taser, he did not actually touch Plaintiff. (ECF No. 71 at 2.)

The Court disagrees, and overrules the objection. The Magistrate Judge correctly noted that it is not excessive force *per se* for a police officer to draw a taser and point it at an unarmed suspect. However, as with all allegations of excessive force, it is a question of what was reasonable under the circumstances. The Court finds that there is a genuine issue of material fact as to whether Wiedemann pointing his taser at Plaintiff in order to compel him to submit to being handcuffed was reasonable under the specific circumstances presented here.

Second, with respect to Defendant Lindsay, Defendants argue that he should be granted summary judgment as to the unlawful search claim because he never crossed the threshold of the residence, "did not perform any search of the residence[,] and did

not do anything to look for [Plaintiff] inside the residence." (*Id.* at 2–3.) This argument represents an unduly narrow view of Lindsay's involvement in the search. Lindsay testified that he attempted to kick in Plaintiff's door, but was unsuccessful, so he ordered Defendant Jacko to kick in the door. Lindsay was unquestionably part of law enforcement's breach of Plaintiff's home without a warrant, and genuine issues of material fact remain as to whether the totality of the search was unconstitutional. Accordingly, the Court overrules this objection.

Third, Defendants object to the absence of a recommendation for summary judgment in favor of Defendants Wiedemann and Wean with respect to the unlawful search claim. Defendants argue that Wiedemann and Wean "were not called to assist until after Jacko had entered and did not arrive until Plaintiff had already entered the kitchen and confronted Deputy Jacko. Neither Wean nor Wiedemann participated in any kind of search inside the house." (ECF No. 71 at 3.) Again, Defendants artificially narrow the scope of the claim. The "search" that Plaintiff is challenging was the entry, by law enforcement, into Plaintiff's home in search of his person. The Court finds that genuine issues of material fact remain as to whether Wiedemann and Wean participated in an unconstitutional search for Plaintiff inside his own home, and the objection is overruled.

Fourth, Defendants object by arguing that because Defendant Jacko was the one who laid hands on Plaintiff, by grabbing his arm and placing handcuffs on him, that Defendants Lindsay, Wiedemann, Wean, and Stanley are all entitled to summary judgment on the unlawful seizure claim. (ECF No. 71 at 3–4.) However, the facts viewed in the light most favorable to Plaintiff reveal that Lindsay, Wiedemann, and Wean were

8

all instrumental parts of a chain of events that led to Plaintiff's seizure. Lindsay was the first to interact with Plaintiff and chased him into his home. (Lindsay Dep. p. 61–63.) He directed Jacko to kick the door in (*id.* at 77) and Wean to assist Jacko with the seizure of Plaintiff. (Wean Dep. p. 51.) Jacko testified that Wean helped him handcuff Plaintiff. (Jacko Dep. p. 58.) He further testified that Wiedmann pointed a taser at Plaintiff while he and Wean handcuffed Plaintiff, and that Wiedmann told Plaintiff, "Don't move or you're going to be tased." (*Id.* p. 61–62.) Therefore, with respect to Defendants Lindsay, Wiedemann, and Wean, the objection is overruled.

Plaintiff does not oppose the dismissal of Defendant Stanley from this action. In his reply to Defendants' objections, Plaintiff notes, "Lieutenant Stanley arrived at the scene after Plaintiff was already handcuffed, removed from his home, and taken to the street. . . . Lieutenant Stanley ordered Defendants to release Plaintiff after Ms. Foggy informed Defendants he was not the suspect." (ECF No. 73 at 2 n.1.) Indeed, given that the Magistrate Judge specifically recommended that Defendant Stanley should be dismissed as a party on Plaintiff's illegal search claim and excessive force claim (*see* ECF No. 70 at 13 n.7, 17 n.9), it seems as though it may have been mere oversight not to also recommend that he be dismissed from the seizure claim. In any event, given that Plaintiff does not oppose such dismissal, Defendant Stanley is hereby dismissed from this action.

**B. Qualified Immunity As To Defendants Wiedemann and Wean**

Defendants object to the Report's findings regarding qualified immunity, arguing that Defendants Wiedemann and Wean are entitled to qualified immunity on the unlawful

9

seizure and excessive force claims because they were only present in Plaintiff's residence as a result of a call for help from a fellow law enforcement officer. (ECF No. 71 at 4.) Defendants assert that, when judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, Wiedeman and Wean "were within their rights to assist Jacko, detain the Plaintiff[,] and to use 'some degree of physical coercion' to effect the detainer." (*Id.* at 5–6 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).)

However, the Court finds that Defendants erroneously construe the facts in a light favorable to their own position when they argue that Plaintiff was "actively resisting and struggling with Deputy Jacko" as Wiedemann and Wean entered the residence, and therefore could reasonably be characterized as posing a danger or threat to the deputies on scene or to bystanders. (*See* ECF No. 71 at 6.) The facts of the case, when construed in the light most favorable to Plaintiff demonstrate that Defendants kicked in Plaintiff's door, intruded into the privacy of his home, pointed a taser at him, put him in handcuffs, and forcibly removed him from his home against his will in the presence of his wife and children. It is undisputed that Plaintiff committed no crime, and posed no danger to anyone in his own home. Defendants' assertion that Wiedemann and Wean are entitled to qualified immunity because they were simply acting as backup for Lindsay and Jacko is of no moment. The Court finds that genuine issues of material fact remain as to whether Defendants, including Wiedemann and Wean, were justified in the warrantless search of Plaintiff's residence and/or with Plaintiff's seizure. As the Magistrate Judge rightly noted, "[I]t was certainly clearly established at the time of the incident at issue in

this lawsuit that law enforcement officers must have a reasonable basis to justify even an investigatory detention, and that they are not justified in conducting a warrantless search of a residence or seizure of a person absent exigent circumstances." (ECF No. 70 at 19 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).) The Court agrees with the Magistrate Judge's sound analysis and conclusions on the qualified immunity issue and overrules Defendants objections.

### C. Report's Section I "Unlawful Seizure"

Plaintiff objects to the Report "to the extent that it agrees, if at all, with the Defendants that their seizure of Mr. Smith constituted a 'stop and frisk,' as contemplated by *Terry v. Ohio*, 392 U.S. 1 (1968)." (ECF No. 72 at 2.) Plaintiff further states that he "objects to the [Report] not specifically finding that the evidence establishes that Defendants placed Mr. Smith under arrest such that their conduct must be analyzed as to whether probable cause existed for Defendants to arrest him." (*Id.*)

With respect, the undersigned does not read the Report as making an affirmative finding that Defendants' seizure of Plaintiff constituted a "stop and frisk" detention as opposed to an arrest. Rather, the Magistrate Judge reasoned that, "[e]ven under [the reasonable, articulable suspicion] standard, . . . which is a less demanding standard than probable cause," Defendants *still* failed to satisfy their burden to show that summary judgment is appropriate. (*See* ECF No. 70 at 10.) The Magistrate Judge stated, "Here, considered in the light most favorable to the Plaintiff, the evidence presented is sufficient to create a genuine issue of fact as to whether the Sheriff's Deputies had any such reasonable suspicion to justify Plaintiff's seizure and detention in this case, no matter

11

how brief." (*Id.* (noting that Defendants contend Plaintiff was held in "investigative detention" for approximately eleven minutes before being released).) The Court notes that Plaintiff filed no cross-motion for summary judgment seeking to establish that he was subject to an unconstitutional arrest as a matter of law. The Report evinces no error on this point and Plaintiff's objection is overruled.

**D. Report's Section I "Excessive Force"**

Plaintiff further objects to the section of the Report that discusses the excessive force claim and "seeks to clarify the [Report] that any force used when an officer is not entitled to arrest or detain a suspect violates the Fourth Amendment, to include the drawing of a taser." (ECF No. 72 at 6.) Plaintiff argues that "an issue for the jury exists as to whether Defendant Wiedemann's drawing of his taser at Mr. Smith amounts to excessive force." (*Id.*)

This objection appears to construe the Magistrate Judge's discussion of case law pertaining to drawing and pointing a taser as an *affirmative finding* that Wiedemann's actions did not constitute excessive force in this case. However, the Magistrate Judge's discussion of this point, in a footnote, must be taken in context:

> Plaintiff [in his response in opposition to the motion for summary judgment,] also argues that Wiedemann's drawing of his taser, even if not used, further argues against granting summary judgment under the facts presented here. *Cf. Amuels v. Nutter*, No. 15-665, 2016 WL 1572933, at *2-3 (E.D. Va. April 18, 2016) [Noting Fourth Amendment Excessive Force Claim based on the pointing of a firearm may be viable under some circumstances]; *see also Gunsay v. Mozayeni*, No. 16-1131, 2017 WL 2684015, at *4-5 (4th Cir. June 21, 2017) [Discussing excessive force involving the pointing of a firearm]; *Cook v. Holmes*, No. 16-17, 2016 WL 6561458, at *4 (W.D. Va. Nov. 3, 2016) [same]; *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) [Finding that pointing a gun at the head of an apparently unarmed man was actionable as excessive force under the facts of that case]; *Bellotte v. Edwards*, No. 08-94, 2009 WL

12

> 10675028 at *5 (N.D.W. Va. Feb. 2, 2009). However, the undersigned does not find that Wiedemann's mere drawing of his taser *by itself* would amount to an excessive use of force. *Cf. Matthews v. Oebus*, No. 14-6003, 2018 WL 1378178 at *4 (N.D. Ill. Mar. 19, 2018) [Pointing of taser, in and of itself, did not give rise to a claim of excessive force]; *Noe v. W. Virginia*, No. 10-38, 2010 WL 3025561 at *7 (N.D.W. Va. July 29, 2010) [same]; *Wallace v. Poulos*, No. 08-0251, 2009 WL 3216622 at *11 (N.D.N.Y. Mar. 4, 2016) [same]; *Guilford v. Frost*, 269 F. Supp. 3d 816, 829 (W.D. Mich. 2017) [Sixth Circuit has never held pointing a taser, as opposed to discharging it, constitutes excessive force].

(ECF No. 70 at 16–17 n.8 (emphasis added).) The Court finds no error in the Magistrate Judge's discussion of these precepts. The Report analyzed *Defendants'* motion for summary judgment, and consistently found that genuine issues of material fact remained as to all questions of Fourth-Amendment consequence. The Magistrate Judge made no affirmative finding that Defendant Wiedemann's use of his taser was reasonable under the circumstances, nor would the Magistrate Judge have been right to do so given the procedural context. Accordingly, Plaintiff's objection is overruled.

## **CONCLUSION**

After careful consideration of the relevant filings and the record, the Court finds that Plaintiff's and Defendants' objections are without merit and the Magistrate Judge's conclusions are correct. Accordingly, for the reasons stated above and by the Magistrate Judge, the Court overrules the objections, adopts the Report, and incorporates it by specific reference herein. It is therefore ORDERED that Defendant's motion for summary judgment (ECF No. 60) is GRANTED in part and DENIED in part. All state law claims (Counts 4–7) are DISMISSED without prejudice, and Defendants Charleston County Sheriff's Office and Donald Stanley are DISMISSED as party defendants from this action. Moreover, Defendant Lindsay is DISMISSED as a party on Plaintiff's excessive

13

force claim only.

    **IT IS SO ORDERED.**

                                          <u>/s/Bruce Howe Hendricks</u>
                                          United States District Judge

March 22, 2019
Charleston, South Carolina